ELITE WOOD PRODUCTS CORP., A CORPORATION, PLAIN-
TIFF-APPELLANT, v. BERNARD FEIN, ET AL., DEFEND-
ANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1951—Decided December 13, 1951.

Before Judges McGeehan, Jayne and Wm. J. Brennan, Jr.

*Mr. Samuel A. Larner* argued the cause for appellant (*Messrs. Budd & Larner*, attorneys).

*Mr. Leon L. Levy* argued the cause for respondent Trenton Products Company.

*Mr. Andrew B. Crummy* appeared for respondents Ansley Radio & Television, Inc.; T. Stewart Harris and The LaSalle Company (*Messrs. Crummy & Consodine*, attorneys).

The opinion of the court was delivered by

McGeehan, S. J. A. D.  Plaintiff is the owner of all the outstanding preferred stock of Winthrop Products Corporation (hereinafter referred to as Winthrop), a Massachusetts corporation.  It brought this stockholder's suit against Trenton Products Company (hereinafter referred to as Trenton), Ansley Radio & Television, Inc., (hereinafter referred to as Ansley) and others, and joined Winthrop as a defendant.  Trenton and Ansley are both New Jersey corporations and were served with process within this State.  All the other defendants, including Winthrop, are nonresidents and no personal service of process was made upon any of them in New Jersey.  Substituted service was made on Winthrop and on four other nonresident defendants.

In pertinent part the complaint charged that defendants Bernard Fein and T. Stewart Harris exercised full voting control of Winthrop through ownership of its common stock; that they entered into a corrupt and fraudulent scheme to enrich themselves and ruin Winthrop and siphon off its business and assets; that in furtherance of this scheme, they

organized Ansley and Trenton and own all the stock of these corporations; that all the machinery, equipment and inventory of Winthrop were converted by Fein and Harris and found their way into the control and possession of Ansley and Trenton, without the payment of any consideration or benefit to Winthrop and without Winthrop's authority or consent; that Ansley and Trenton engaged in the same manufacturing business as had Winthrop, and Fein and Harris diverted to Ansley and Trenton all potential sales of Winthrop, including substantial contracts for manufacture and sale; and that Ansley and Trenton gained very substantial profits from the fraudulent diversion of the physical assets and business opportunities of Winthrop. The complaint demanded that Ansley and Trenton make discovery and account for the assets of Winthrop unlawfully diverted; that the court adjudge that the assets of Trenton and Ansley, the profits earned by them, and the stock in said corporations belong to Winthrop, and that said defendants hold said assets, profits and stock as constructive trustees for Winthrop; that Trenton and Ansley account to Winthrop for all profits and earnings derived from their businesses; that judgment be entered against them for the amount due to Winthrop by reason of the diversions aforesaid and the resultant illegal profits earned by them; and that *ad interim* restraints be granted and a receiver appointed.

Defendants Trenton and Ansley moved to dismiss the complaint against them on the ground that our court was without jurisdiction to enter any effective or valid or conclusive judgment affecting the defendants Trenton and Ansley, because Winthrop is a necessary and indispensable party to the suit and has not been and cannot be served with process in New Jersey. The trial court entered an order dismissing the complaint as to the defendants Trenton and Ansley "in all respects except insofar as the complaint makes claim to physical assets of Winthrop Products Corporation allegedly removed to the State of New Jersey, and as to that claim the suit shall proceed to final hearing."

It is conceded that Winthrop is a Massachusetts corporation which has neither done any business in New Jersey nor been authorized to do so, and that Winthrop is in reality the plaintiff in this cause, although nominally a defendant.

The plaintiff argues that the trial court erred in limiting the suit against Trenton and Ansley to relief solely in connection with physical assets of Winthrop within the State of New Jersey. But the real question before us is narrower. The only assets of Winthrop claimed to be, or to have been, in possession of Trenton and Ansley consisted of physical assets, namely, machinery, equipment and inventory. The only relief sought against Trenton and Ansley, other than in connection with such physical assets, depended upon the claim against them for an unliquidated amount of profits made by them. Neither Trenton nor Ansley admitted any debt or demand, either liquidated or unliquidated, due to Winthrop. Consequently, neither a liquidated debt or demand, nor an admitted unliquidated debt or demand, due to Winthrop, is involved. *Cf. State v. Standard Oil Co.*, 5 *N. J.* 281 (1950) affirmed *sub nom.* *Standard Oil Co. v. New Jersey*, 341 *U. S.* 428, 95 *L. Ed.* 1078 (1951).

The only question, then, is whether substituted service on Winthrop gave our court a breadth of jurisdiction sufficient to support a judgment in the suit against Trenton and Ansley on the claim for the unliquidated amount of profits.

When a corporation refuses to sue for wrongful dealing with corporate property, or for a debt or demand due to the corporation, and the action is brought by its stockholders, the corporation is an indispensably necessary party. 4 *Pomeroy Eq. Jur.* (5th ed. 1941), § 1095; 13 *Am. Jur.*, *Corporations*, § 466; cf. *Wilson v. American Palace Car Co.* (second case), 65 *N. J. Eq.* 730 (*E. & A.* 1903). In such a stockholders' suit, if our court obtains control over the property of such a foreign corporation, it may obtain a jurisdiction *quasi in rem* over the foreign corporation, by substituted service, sufficient to support a limited judgment respecting such property. *Wilson v. American Palace Car Co.* (second

case), above; *Standard Oil Co. v. New Jersey,* above. But substituted service alone is not enough to give our court jurisdiction sufficient to support a judgment on a claim for an unliquidated debt or demand which is not admitted. *Wilson v. American Palace Car Co.* (second case), above; *Freeman v. Bean,* 276 *N. Y. Supp.* 310 *(App. Div.* 1934) affirmed 266 *N. Y.* 657, 195 *N. E.* 368 *(Ct. of App.* 1935); *Dean v. Kellogg,* 294 *Mich.* 200, 292 *N. W.* 704 *(Sup. Ct.* 1940). In *Freeman v. Bean,* above, the suit was to compel directors of the corporation to account to the corporation for their allegedly unlawful and improper acts, for property of the corporation alleged to have been wasted, lost and damaged, and for the value of certain stock distributed by them. In *Dean v. Kellogg,* above, there was a prayer for an accounting.

Plaintiff also argues that Trenton and Ansley, who were personally served within the State, cannot be heard to complain about the lack of personal service upon Winthrop, relying on *Wilson v. American Palace Car Co.* (third case), 67 *N. J. Eq.* 262 *(Ch.* 1904). But this case has no application, because it held only that "defendants who have refused to come in have no standing to ask for a dismissal of the bill."

Plaintiff relies heavily on *Kidd v. New Hampshire,* 72 *N. H.* 273, 56 *A.* 465 *(Sup. Ct.* 1903) and argues it is on all fours with this case. We think it has no application. There, no claim for profits was involved. In that case the defendant traction company, a New Hampshire corporation, was duly served and "The interests of the other defendants in the traction company, and the money and property of all the defendants in the hands of the Rockingham County Light & Power Company, a New Hampshire corporation, were attached upon a writ in aid of the bill * * *." Substituted service was made on the shareholders' own corporation, Massachusetts Construction Company, Incorporated, a defendant, which was a Connecticut corporation. In that case the bill charged that stocks and bonds worth $500,000, owned by the suing shareholders' corporation, were fraudulently transferred to

the traction company and the traction company pledged the securities to a New York corporation as security for certain issues of stocks and bonds. The allegations of the bill having been admitted by the filing of the plea, the court found that the traction company held wrongfully either the property or its proceeds, and that "As the plea [of the traction company] does not deny the facts upon which the liability depends, the case stands upon the admission of the traction company of their liability to the Massachusetts Construction Company, Incorporated, in the sum of not less than $500,000. This fund, admittedly in the hands of a resident of this state, is property within this jurisdiction." (56 *A.* at 469.) It was on such findings that the court held that by substituted service upon the foreign corporation "sufficient notice has been given to bind the corporation as to the disposition which may be made of the property." (56 *A.* at 469.)

Judgment affirmed.